IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DANIEL DAVIS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-840-SRF |
| | ) | |
| GAS RECOVERY, LLC, *et al*, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| DANIEL DAVIS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 21-874-SRF |
| | ) | |
| LOGAN SPICER, *et al*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION[1]**

## I.   INTRODUCTION

Presently before the court in this civil rights action arising from the alleged wrongful

repossession of Daniel Davis, III's ("Plaintiff") vehicle are two Motions for Partial Summary

Judgment filed by the Dover Police Officers Logan Spicer, Nathaniel Weir, and Scott Hurd

(collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 56.  The Defendants

---

[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in these consolidated cases consented to the jurisdiction of a magistrate judge to conduct all proceedings in this matter through final judgment, and the case was assigned to the undersigned judicial officer in August of 2021.  (No. 20-840-SRF, D.I. 36; No. 21-874-SRF, D.I. 15)  The cases were consolidated for the purposes of discovery.  (*See* Sept. 8, 2021 Oral Order)  All filings were directed to be made in the lead case No. 20-840-SRF.  (*Id.*)  Therefore, all citations will be to the designated lead case, No. 20-840-SRF, unless otherwise noted.

have filed a Motion for Partial Summary Judgment regarding Plaintiff's conspiracy claim ("Conspiracy Motion")[2] and a Motion for Partial Summary Judgment seeking judgment as a matter of law on Plaintiff's due process and wrongful arrest claims ("Due Process Motion").[3] (respectively, D.I. 85; D.I. 87)  For the following reasons, the court DENIES both Motions.

## II.   BACKGROUND

This is a civil rights action arising from the alleged wrongful repossession of Plaintiff's 2017 Dodge Durango.  According to the First Amended Complaint ("FAC"), on June 24, 2019, Gas Recovery, LLC, ("Gas Recovery"), acting on behalf of the financing entity, Santander Consumer USA Inc. d/b/a Chrysler Capital ("Chrysler"), attempted to repossess Plaintiff's vehicle without first obtaining a court order.  (No. 21-874-SRF, D.I. 31 at ¶¶ 15–16, 18)  Plaintiff avers he objected to the repossession peacefully, but Gas Recovery called the City of Dover Police Department ("Dover Police") for assistance.  (Id. at ¶¶ 21–22)  Officers Spicer and Weir and Corporal Hurd arrived at the scene, and one or more of them instructed Plaintiff to leave his vehicle.  (Id. at ¶¶ 22–24)  When Plaintiff refused, he contends Defendants forcibly removed him from his vehicle, deployed tasers at least twice, arrested and charged him with various offenses. (Id. at ¶ 24)

Plaintiff filed two actions which were consolidated for discovery by Oral Order on September 8, 2021.  The first action is against the repossession company, Gas Recovery, and the financing entity, Chrysler.[4]  (No. 20-840-SRF)  The second action is against Dover Police Officers Logan Spicer, Nathaniel Weir, and Scott Hurd.  (No. 21-874-SRF)  The FAC against the

---

[2] The briefing for the Conspiracy Motion is as follows: Defendants' opening brief (D.I. 86), Plaintiff's response brief (D.I. 89), and Defendants' reply brief (D.I. 92).
[3] The briefing for the Due Process Motion is as follows: Defendants' opening brief (D.I. 88), Plaintiff's response brief (D.I. 90), and Defendants' reply brief (D.I. 93).
[4] The case against Gas Recovery and Chrysler has settled.  (D.I. 96)

moving Defendants asserts claims for excessive force, (No. 21-874-SRF, D.I. 31 at ¶ 59), false

arrest, (*Id.* at ¶ 60), false imprisonment, (*Id.* at ¶ 61), malicious prosecution, (*Id.* at ¶ 62), aiding

in a civil repossession without due process, (*Id.* at ¶ 57), conspiring to destroy video evidence,

(*Id.* at ¶ 41), and the failure to intervene, (*Id.* at ¶ 63).  The Motions for Partial Summary

Judgment are directed only to the claims for conspiracy, due process violations for aiding in the

repossession, and wrongful arrest.  (D.I. 85; D.I. 87)

There were three attempts to repossess the Plaintiff's vehicle wherein Gas Recovery

called Dover Police despite its failure to obtain a court order for the repossession.  (D.I. 91, Ex. 1

at 37:16–18, 39:23–40:4; 51:23–24)  The first two repossession attempts were unsuccessful.  (*Id.*

at 38:5–7, 40:11–15)  The third repossession attempt is the subject of this litigation.

At the time of the repossession, Plaintiff was living in the Durango, which he parked in

the Country Club Apartments in Dover, Delaware, where is friend, Sonia Addison, resided.  (*Id.*

at 32:24–33:5; 35:2–8; 36:22–37:4; 39:18–20)  The third repossession attempt occurred on June

24, 2019, in the early morning hours, at approximately 1 a.m.  (*Id.* at 87:6–18)  Plaintiff saw the

tow truck operator preparing to tow his vehicle, so the Plaintiff entered the vehicle.  (*Id.* at 48:8–

49:22)

After the tow truck operator had the front wheels hooked, the operator told Plaintiff that

he was going to call the police.  (*Id.* at 49:23–24)  Plaintiff responded that he had a right to

oppose the repossession, but the tow truck operator said, "I have a special rapport with the police

officers on this shift" and points to his back window, saying he has a camera.  (*Id.* at 50:3–20)

The tow truck operator then lifted the front wheels of the vehicle with the tow equipment and

called police.  (*Id.* at 50:21–51:1)  Plaintiff contends that out of concern for his safety in the

vehicle and to alert his friend who lived in the apartment complex, Plaintiff honked his car horn. (*Id.* at 51:1–13)

Defendants Spicer and Weir, both patrolmen for the City of Dover Police Department, arrived at the scene and observed Plaintiff sitting in the Durango which was already attached to the tow truck with its front wheels suspended. (D.I. 91, Ex. 4 at 73:8–74:23; D.I. 91, Ex. 5 at 27:2–29:10)

According to the Plaintiff, when the Officers arrived, they went over to the tow truck operator and had a "conversation for several minutes." (D.I. 91, Ex. 1 at 52:10–20) Afterwards, the Officers, individually, made various attempts to persuade Plaintiff to leave the Durango. (*Id.* at 53:7–57:24) Plaintiff states that he was told he was not under arrest so he remained inside his Durango and asked for a Dover Police Department supervisor. (*Id.* at 53:16–17; 55:11–13, 55:21–56:8)

Plaintiff contends that one of the Officers claimed that he would require the tow truck operator to release the vehicle if the Plaintiff showed him the vehicle's title. (*Id.* at 57:21–24; 58:22–59:1) Plaintiff presented the vehicle's registration and title and claims the Officers had another "lengthy conversation" with the tow truck operator. (*Id.* at 58:1–59:6) Thereafter, both Officers returned to Plaintiff's vehicle and attempted to force the window down and unlock the door. (*Id.* at 59:11–63:15) Plaintiff denies activating the vehicle's horn and claims it was Defendant Weir's elbow which activated it. (*Id.* at 62:11–16; D.I. 91, Ex. 3 at ¶ 5) Once the door was opened, one of the Officer's grabbed Plaintiff's arm and told him he was under arrest for disturbing the peace. (D.I. 91, Ex. 1 at 63:17–64:6)

Plaintiff claims he was not resisting arrest, but nevertheless, the Officers beat him and used their taser on him twice before putting him in the police cruiser. (*Id.* at 64:11–67:17; 72:3–

4

74:20; 76:8–79:15)  Plaintiff claims the beating occurred in the presence of the Officers'

supervisor, Defendant Scott Hurd, and fellow Officer Mark Guiteras.  (*Id.* at 74:21–75:24)

Plaintiff claims he heard an individual say, "[t]hat's enough. Let him up. Get off him," but could

not say whether it was Defendant Hurd or Guiteras.  (*Id.* at 74:10–23)

Defendant Spicer allegedly grabbed Plaintiff's keys out of the Durango and handed them

to the tow truck operator who drove away with Plaintiff's vehicle.  (*Id.* at 84:11–19)  Following

his arrest, Plaintiff requested to go to the hospital for the pain in his ribs and difficulty breathing,

so he was transported to Bayhealth Hospital.  (*Id.* at 94:14–97:5)

Defendants dispute Plaintiff's account of the incident.  They claim that the Plaintiff was

actively honking the horn and yelling after they arrived at the scene.  (D.I. 91, Ex. 4 at 81:1–12;

D.I. 91, Ex. 5 at 20:10–11)  They also claim that the Plaintiff was combative with them, resisted

arrest and attempted to run as the Officers took him to the patrol vehicle.  (D.I. 91, Ex. 4 at

143:19–144:25, 145:22–24; D.I. 91, Ex. 5 at 22:1–23:2, 180:7–10)

Plaintiff was criminally charged as a result of the incident, and his trial was set to begin

on September 22, 2021.  (No. 21-874-SRF, D.I. 31 at ¶ 7)  Shawn Sweigart[5] ("Sweigart"), an

employee of Gas Recovery, was the individual tow truck operator hired to repossess Plaintiff's

vehicle and was expected to testify as the State's witness in the Plaintiff's criminal trial.  (*Id.*)

Plaintiff claims that Sweigart, in the presence of Plaintiff's counsel, the State Prosecutor, and

other witnesses disclosed that a video was recorded from equipment in his tow truck and it

captured the Dover Officers' use of force against the Plaintiff.  (*Id.*)  Sweigart allegedly

represented that his employer, Gas Recovery, was instructed by Dover Police to destroy the

---

[5] The witness has been referred to by different names.  Defendants assert the witness identified
himself to the Officers as "Craig Jones" on the night of the third repossession.  (D.I. 86 at ¶ 11)
Gas Recovery previously referred to him as "Carl Walker."  (D.I. 54, Ex. 4 at ¶ 5)  Further
investigation revealed his name is "Shawn Sweigart."  (D.I. 86 at ¶ 11)

video.  (*Id.*)  Plaintiff includes as an exhibit to his answering brief a link to a videorecording made by his attorney outside the courthouse on the day of Plaintiff's criminal trial in which Sweigart recounts the foregoing statements.  (D.I. 91, Ex. 16; *see also* D.I. 91, Ex. 17)  The prosecutor did not go forward with trial and the criminal charges against the Plaintiff pending in the Court of Common Pleas for Kent County, Delaware, were dismissed *nolle prosequi* with prejudice.  (No. 21-874-SRF, D.I. 31 at ¶¶ 45–46)

On June 18, 2021, Plaintiff initiated this suit against Officers Spicer, Weir, Hurd, and John Does 1-4.  (No. 21-874, D.I. 1)  The FAC was filed on March 7, 2022.  (No. 21-874, D.I. 31)  Plaintiff attempted to subpoena Sweigart for a deposition regarding his recorded statements but has been unsuccessful.  (*See* D.I. 49; D.I. 66)  In his deposition, Gas Recovery's principal, Brandon Mullins, refuted Sweigart's statements that the tow truck was equipped with video recording equipment.  (D.I. 86, Ex. D at 13:9–17)  Mullins testified that the device on the tow truck was a license plate reader.  (*Id.* at 82:3–25)

On September 30, 2022, Defendants filed the present Motions for Partial Summary Judgment.  (D.I. 85; D.I. 87)  The Motions seek judgment as a matter of law on Plaintiff's claim that Defendants conspired to cover-up their wrongdoing; Plaintiff's claim of a due process violation for improper police involvement in a civil repossession, and Plaintiff's claim for wrongful arrest without probable cause.  (*See e.g.*, No. 21-874-SRF, D.I. 31 at ¶¶ 6, 36, 57, 60 64)

## III.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that could affect the outcome of the proceeding, and "a

6

dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury

to return a verdict for the non-moving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.

2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed

material fact. *See Celotex*, 477 U.S. at 322. The burden then shifts to the non-movant to

demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the

light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458,

460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not

a fact is genuinely disputed must be supported either by citing to "particular parts of materials in

the record, including depositions, documents, electronically stored information, affidavits or

declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials," or by "showing that the materials cited do not

establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

To defeat a motion for summary judgment, the non-moving party must "do more than

simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475

U.S. at 586. The "mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment;" rather, there must be

enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See*

*Anderson*, 477 U.S. at 247–49 (emphasis in original). "If the evidence is merely colorable, or is

not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations

omitted); *see also Celotex*, 477 U.S. at 322.  If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law.  *See Celotex*, 477 U.S. at 322–23.

IV.   **DISCUSSION**

A.   **Defendants Have Not Met Their Burden for Summary Judgment on the Plaintiff's Conspiracy Claim**

Plaintiff claims the Defendants conspired to cover-up their wrongdoing by directing the destruction of video evidence captured from Sweigart's tow truck.  (No. 21-874-SRF, D.I. 31 at ¶¶ 36, 41–42)  Defendants assert summary judgment is appropriate because the Plaintiff has not produced admissible evidence to support his conspiracy claim.  (D.I. 86 at 13–15)  *See* Fed. R. Civ. P. 56(c)(1)(B) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by showing . . . that an adverse party cannot produce admissible evidence to support the fact.").

Specifically, Defendants argue the only evidence supporting the conspiracy is Sweigart's recorded inadmissible hearsay statements on the courthouse steps.  (D.I. 86 at 15)  Further, Defendants argue that the deposition testimony of Gas Recovery's principal Brandon Mullins refutes Sweigart's statements entirely because Mullins testified that there was never a video recorder on the tow truck.  (*Id.* at 13–14; D.I. 92 at 7; *see* D.I. 91, Ex. 8 at 13:9–17)

Plaintiff argues Sweigart's statements are admissible under various hearsay exceptions.  (D.I. 89 at 14–20)  In addition, Plaintiff asserts there is other evidence supporting his conspiracy claim.  (*Id.* at 10–14)  For example, Plaintiff contends the omission of facts from Defendant Spicer's Investigative Narrative Report, the inconsistencies in testimony among the Officers, and the various conversations Defendants Spicer and Weir had with Sweigart all support his conspiracy claim.  (*Id.* at 10–13; *see* D.I. 91, Ex. 1 at 52:10–53:9; 58:6–59:10; D.I. 91, Ex. 9;

8

D.I. 91, Ex. 10 at 50:19–22; D.I. 91, Ex. 11 at 118:07–121:03)  Additionally, Plaintiff argues that the absence of video footage draws an adverse inference that Defendants directed the destruction of the evidence as part of their cover-up.  (D.I. 89 at 13–14)

"To prevail on a conspiracy claim under [section] 1983, a plaintiff must prove that persons acting under color of state law 'reached an understanding' to deprive him of his constitutional rights."  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150–52 (1970)).  Circumstantial evidence can be used to demonstrate an agreement in the absence of direct proof.  *Id.* at 295.  Additionally, when the alleged conspirators are police officers, circumstantial evidence may include "conversations between officers about the incident, allegedly distorted stories that emerged, and awareness of conflicting stories and irregularities in the series of official investigations into the incident."  *Id.*  Weighing the circumstantial evidence "is among the chief tasks of factfinders."  *Id.*

Completely absent from Defendants' brief is any discussion of the elements of a conspiracy claim under section 1983.  Thus, Defendants have failed to support their Motion with any legal argument as to why they contend the elements for a conspiracy claim are not satisfied as a matter of law.  Instead, Defendants drafted what amounts to a motion *in limine* arguing that Sweigart's recorded statement made on the courthouse steps on the date of the Plaintiff's criminal trial is inadmissible.  The issue of the admissibility of Sweigart's recorded statement is not presently before the court.

Setting aside the lack of legal support for Defendants' Motion, the court cannot grant the Conspiracy Motion due to the disputed material facts concerning whether a video of the repossession ever existed, and if so, whether it was destroyed.  The Plaintiff's testimony is that

9

Sweigart told him he had a camera in the tow truck and that the Plaintiff saw a "green dot of light" coming from an area near the driver's seat. (D.I. 91, Ex. 1 at 129:16–134:16)

Additionally, evidence from the Defendants does not rule out the possibility that a video of the incident was captured. Defendant Spicer testified to seeing a "video camera on the repossession truck." (D.I. 91, Ex. 4 at 14:10–16) Defendant Hurd testified that Sweigart told him "everything has been recorded" and gave Defendant Hurd his business card to call him to obtain a copy. (D.I. 91, Ex. 11 at 66:23–67:21) Further, Defendants Spicer and Weir wrote in their Use of Force Reports that a video was captured by the tow truck operator and that Defendant Hurd was in charge of securing a copy. (D.I. 91, Exs. 13–14 at 3, 7; *see also* D.I. 91, Ex. 9 at 5)

Defendants attempt to refute their own evidence with Mullins' testimony that the repossession trucks are not equipped with video recorders and the Officers must have mistakenly believed that the license plate reader on the tow truck was a video recorder. (D.I. 86 at 13–14; D.I. 92 at 7; *see also* D.I. 86, Ex. D at 13:9–17; 82:3–25)

Viewing the facts in the light most favorable to the Plaintiff, the court finds material issues of fact exist from which a jury could infer a conspiracy to cover-up Defendants' alleged wrongdoing during the vehicle repossession, thus, precluding summary judgment in favor of the Defendants. *See Cosby v. Magnotta*, No. 3:10-CV-01881, 2014 WL 694998, at *10 (M.D. Pa. Feb. 24, 2014) (denying the defendants' summary judgment motion regarding the plaintiff's conspiracy claim because the record contained enough circumstantial evidence from which a jury could infer that they conspired to violate the plaintiff's constitutional rights).

**B.**     **Defendants Have Not Met Their Burden for Summary Judgment on the Plaintiff's Due Process Claim**

Defendants argue the Plaintiff's due process claim for affirmatively aiding in a civil repossession should be dismissed because Defendants Spicer and Weir were responding to a disorderly conduct call. (D.I. 88 at 11–13)

In assessing Plaintiff's claim that Defendants deprived him of his due process rights, "[t]he relevant inquiry . . . is whether [the officers] affirmatively aided a repossession such that [the officers] can be said to have caused the constitutional deprivation." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 610 (3d Cir. 2011). "Such aid may take the form of facilitation, encouragement, direction, compulsion, or other affirmative assistance in the repossession." *Id.* An officer who "maintains neutrality" in a repossession effort does not violate section 1983, but "liability will . . . attach when an officer plays a 'principal role' in the seizure." *Id.* (citing *Abbott v. Latshaw*, 164 F.3d 141, 147 (3d Cir. 1998)). Further, "the facts and circumstances of the police officer's role in the private repossession must be examined in their totality." *Id.*

Defendants have collectively moved for summary judgment, without asking the court to separately consider the conduct of each Officer. The Defendants fail to cite any legal authority in support of their Motion. Instead, Defendants rely solely on the labeling of the incident as it appears in a Computer Aided Dispatch ("CAD") report. (D.I. 88 at 11) The incident was labelled a report of "disorderly conduct." (*Id.*, Ex. C) In deciding summary judgment, the court considers the facts in the record. The labelling of an incident in a form created by a police dispatch operator is not dispositive.

Here, based upon the factual record, the court finds a reasonable jury could conclude that the Defendant Officers were more than neutral observers to the repossession of Plaintiff's Durango. The key factual dispute is whether Defendants acted in response to a disorderly

11

conduct call or aided a civil repossession.  Defendants claim they were responding to a

disorderly conduct call because the CAD report of the incident mentions disorderly conduct.

(D.I. 88 at 11; *see id.*, Ex. C)  Plaintiff argues that the CAD report is completed after the fact and

that the radio transmissions about the incident reveal the Defendant Officers were directed to

arrive at the Country Club Apartments to assist in the repossession of a vehicle.  (D.I. 90 at 14;

*see* D.I. 91, Ex. 6; *see also* D.I. 91, Ex. 4 at 84:8–85:5; D.I. 91, Ex. 5 at 107:4–109:21)

Moreover, the Defendants do not dispute that Defendant Spicer handed the Plaintiff's

keys to Sweigart who drove away with Plaintiff's vehicle.  (D.I. 91, Ex. 1 at 84:11–19)  A jury

could reasonably find that such conduct amounts to affirmative assistance in the repossession.

Plaintiff further contends that Defendants Weir and Spicer, after two conversations with

Sweigart and numerous attempts to persuade the Plaintiff to exit the vehicle, resorted to physical

force against the Plaintiff.  (D.I. 91, Ex. 1 at 52:05–61:2)  The Defendant Officers allegedly used

excessive force to remove the Plaintiff from his vehicle for the purpose of allowing Sweigart to

complete the repossession.  (*Id.* at 61:3–74:20)

Therefore, the court finds that a reasonable jury could determine that the Defendants

affirmatively aided the repossession such that their conduct caused the alleged constitutional

deprivation. *See Hyman v. Morris*, 320 F. Supp. 3d 707, 716–17 (E.D. Pa. 2018) (finding a

reasonable jury could conclude that the police officer affirmatively aided the repossession when

the officer ordered the plaintiff out of the vehicle and threatened to forcibly remove and arrest

her for disorderly conduct if she did not comply).  Therefore, summary judgment on Plaintiff's

due process claim is denied.

### C.     Defendants Have Not Met Their Burden for Summary Judgment on the Plaintiff's Wrongful Arrest Claim

Defendants argue that the facts are undisputed that there was probable cause to arrest the Plaintiff for disorderly conduct under Delaware law.[6] (D.I. 88 at 13–15)  Defendants' Motion fails because it consists of nothing more than conclusory assertions that the legal requirements for disorderly conduct and probable cause have been satisfied.

A wrongful arrest claim requires a plaintiff to establish: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." *James v. City of Wilkes-Barre*, 700 F.3d 675, 680 (3d Cir. 2012).  Probable cause is present "when the facts and circumstances within [the officer's] knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Wagner v. N. Berks Reg'l Police Dep't*, 816 F. App'x 679, 682 (3d Cir. 2020).

Viewing the record in the light most favorable to the Plaintiff, the court finds that there is a genuine dispute of material facts as to whether there was probable cause to arrest Plaintiff for disorderly conduct.

The Plaintiff admits to activating the horn on the vehicle prior to the Defendant Officers' arrival but argues his conduct was not disorderly.  (D.I. 91, Ex. 1 at 51:1–13)  Plaintiff states he activated the horn for safety reasons because he wanted to stop the tow truck operator from lifting the vehicle further off of the ground while he occupied it and to alert his friend in the apartment complex.  (*Id.* at 85:20–87:1).

---

[6] "A person is guilty of disorderly conduct when . . .[t]he person intentionally causes public inconvenience, annoyance or alarm to any other person, or creates a risk thereof by . . . [m]aking an unreasonable noise or an offensively coarse utterance, gesture or display, or addressing abusive language to any person present[.]"  Del. Code Ann. tit. 11, § 1301(1)(b) (1995).

There is a factual dispute regarding who was responsible for activating the horn after the Officers arrived. Plaintiff contends that it was not him but Defendant Weir who honked the vehicle's horn in the effort to remove the Plaintiff from it. (D.I. 91, Ex. 3 at ¶ 5) Plaintiff alleges Defendant Weir's elbow activated the vehicle's horn when he tried to push the window down in an attempt to open the door. (D.I. 91, Ex. 1 at 62:07–64:11) However, Defendants Spicer and Weir contend the Plaintiff yelled and activated his horn after they arrived at the scene and disturbed the residents in the apartment complex. (D.I. 91, Ex. 4 at 81:1–12; 82:5–7; D.I. 91, Ex. 5 at 20:10–15)

The court denies summary judgment on the Plaintiff's wrongful arrest claim because the material facts are disputed and a reasonable jury could find that the Defendant Officers did not have probable cause to arrest the Plaintiff for disorderly conduct.

## V.   CONCLUSION

For the foregoing reasons, the court DENIES Defendants' Conspiracy Motion and Due Process Motion. (D.I. 85; D.I. 87) An Order consistent with this Memorandum Opinion shall issue.

Dated: February 16, 2023

Sherry R. Fallon
United States Magistrate Judge